UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-60020-CR-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

vs.

CHRISTOPHER GARNTO,

        Defendant.
_____/

### GOVERNMENT'S OPPOSITION TO CHRISTOPHER GARNTO'S SECOND MOTION TO MODIFY SUPPLEMENTAL CONDITION OF PRETRIAL RELEASE CONCERNING EMPLOYMENT IN "HEALTH CARE FIELD"

The United States of America, through counsel, hereby opposes defendant Christopher Garnto's ("Garnto") Second Motion to Modify Supplemental Condition of Pretrial Release Concerning Employment in "Health Care Field" [D.E. 165] ("Motion").[1] Garnto seeks permission to return to work in the very industry in which, for the last three years, he allegedly took advantage of patients with serious addictions, as well as private insurance plans, to make money for himself. As alleged in the Indictment and Complaint, Garnto was the key patient recruiter for Compass Detox and WAR. Garnto ensured that Compass Detox and WAR had a steady stream of patients for which to bill private insurance companies. He did this, in part, by directing other patient recruiters to help known drug addicts get high on illegal drugs or alcohol so that they would appear qualified to attend detox, the most expensive level of care offered by Compass Detox. Once admitted to Compass Detox, the defendants, including Garnto, engaged in a wide-ranging and varied health care and wire fraud scheme described at length in the Complaint and Indictment. For

---

[1]     Garnto also filed a motion to permit him to sell certain property [D.E. 175] and the Government does not intent to oppose that motion.

1

example, patients often would be over-medicated to the point of sedation, including through the overuse of controlled substances and a concoction known as a "comfort drink," which was a bluish-green liquid mixture of sedative medications about the size of a shot of alcohol. The Government presented evidence at the preliminary hearing, which is also available in discovery, that Garnto, who is not a medical professional, directed medical personnel to give patients additional medication when they requested it. In addition, Garnto paid patients, helped arrange their flights from all over the country to South Florida, and paid patient recruiters in order to ensure that patients would enroll in and remain at Compass Detox, all of which are kickbacks prohibited by the Eliminating Kickbacks in Recovery Act ("EKRA"). These kickbacks enabled the subsequent fraudulent billing. Furthermore, Garnto owned a laboratory to which Compass Detox sent urine samples for medically unnecessary urinalysis testing that was billed to private insurers, often for thousands of dollars per test. In exchange for these referrals, Garnto's lab paid co-defendant Jonathan Markovich, an owner of Compass Detox, over $200,000 in kickbacks.

None of Garnto's arguments in favor of modifying the employment restriction so that he can return to work in the substance abuse treatment industry are availing. First, Garnto's proposed revisions to the restrictions on how he may be compensated for work in the health care field are inconsistent with EKRA. Garnto is charged with an EKRA conspiracy and several substantive EKRA kickback counts. In the context of substance abuse treatment and laboratory services covered by private insurance plans, EKRA criminalizes payment arrangements based on the volume of patient referrals. Yet, with no explanation, Garnto asks the Court to remove the current restriction precluding him from being compensated based on the "volume of customers he refers," and, in its place, substitute a narrower restriction precluding compensation based on the "volume

or value of any monies reimbursed" by an insurer.  EKRA is not so narrow.  The compensation restriction should, at minimum, be as restrictive as the key criminal statute in this area.

Furthermore, Garnto's other revisions to the employment restriction are likewise untenable.  As it stands, the employment restriction was already modified to permit certain employment in the health care field. [D.E. 123.] Contrary to Garnto's assertions that the restriction is "Draconian" (Mot. at 1), the employment restriction is common in health care fraud cases and, because of the prior modification agreed by the parties, is even more reasonable as applied to Garnto.[2]  Even the doctors in this case (Dr. Santeiro and Dr. Lieberman), both of whom went to school for many years to develop a specialized skill and obtain their licenses, have agreed not to treat substance abuse patients.  [D.E. 37, 79.]   To get around this, Garnto simply asserts that the only way he can earn a living is if he returns to the substance abuse treatment field.  But he says nothing about what he has tried to do to find work since he was terminated from his position at Tobias & Associates, or whether he has even attempted to find work in another field.  To be clear, the Government takes no issue with Garnto working as a website developer generally while he is awaiting trial, just as the Government takes no issue with certain other defendants practicing law.  But just as the lawyer defendants cannot become general counsel for a substance abuse treatment center while under their current employment restriction, Garnto cannot become a website developer or marketer for a substance abuse treatment provider.

Finally, Garnto represents that he will follow the law while employed for a substance abuse treatment center, and the Government hopes he will, but the Court should take reasonable

---

[2]  Garnto's trial will begin in roughly four months.  The current employment restriction, as modified by Judge Hunt with the parties' agreement, is even more reasonable when viewed in light of the prompt trial date set by the Court at Garnto's request.  Garnto should seek employment outside the substance abuse industry while awaiting trial for the next four months.  It is that simple.

precautions to ensure that patients and private health plans are not put at further risk while Garnto is released pending trial. That is the point of bond conditions. The conduct alleged against Garnto was egregious and put patients at substantial risk of bodily harm. Private insurers were billed nearly $112 million for services purportedly provided by Compass Detox, WAR, and related providers, in part due to Garnto's alleged conduct. Garnto's representation that he will follow the law if allowed to return to the substance abuse treatment field should be scrutinized in light of these allegations and reasonable restrictions should remain in place to ensure no further violations or harm to patients and victims.

**FACTUAL BACKGROUND**

**A. The Charges Against Garnto**

The Indictment charges Garnto with conspiracy to commit health care fraud and wire fraud (Count 1), substantive health care fraud (Counts 2-9), conspiracy to violate EKRA (Count 10), and substantive EKRA kickbacks (Counts 15-21). [D.E. 110.] While the Indictment alleges the manner and means through which Garnto and his co-defendants carried out the conspiracies, as well as particular examples of alleged fraudulent billings and alleged kickbacks, the criminal Complaint [D.E.1] contains even more specific allegations concerning Garnto. In particular, some of the allegations against Garnto detailed in the Complaint include:

- Multiple witnesses described Garnto as the lead patient recruiter and indicated that other patient recruiters, including co-defendant Mario Kustura, worked under Garnto. Multiple patients described being paid by Garnto, through Kustura or other patient recruiters.

- Patient 1 was paid to attend Compass Detox by co-defendant Mario Kustura, who obtained the money from Garnto. Patient 1 overdosed (and survived) on heroin provided by Kustura.

- Kustura arranged for Patient 2 and another patient to fly from California to South Florida to attend treatment at Compass Detox. Co-defendant D. Markovich paid for the flights and Garnto arranged the ride-share to the airport in California. Kustura sent

4

- the patients, a known addict, money so that they could buy alcohol before coming to Compass Detox.

- Garnto and D. Markovich arranged flights for Patient 5 from New York to Florida to attend Compass Detox.  Garnto also told Patient 5 and another Compass Detox patient that they had to have "dirty" urine before they could come back to Compass Detox, and Garnto provided the money to accomplish this.

- Patient 20 and another patient were instructed by Garnto that they could not return to Compass Detox for treatment if they were "clean."   Garnto would send someone to pick them up and purchase heroin or alcohol for them to get high before returning to Compass Detox.

- Confidential Witness 1, a former nursing employee of Compass Detox, indicated that Garnto would direct Dr. Lieberman to order nursing staff to give patients additional medication.

- Confidential Witness 4, a former Compass Detox employee, indicated that Garnto and D. Markovich—neither of whom are medical professionals—decided how long patients would stay at Compass Detox, and that this was based on the quality of a patient's insurance.

- Garnto, among other defendants, endorsed the practice of patient recycling whereby patients who relapsed at WAR (an outpatient center that provided lower levels of care) would end up back at Compass Detox (an inpatient center that provided higher and more expensive levels of care).

- Cooperating Defendant 1 stated that Garnto told Cooperating Defendant 1, who owned a lab, that other labs offered to pay Compass Detox in exchange for urinalysis referrals. As alleged in the Complaint, Garnto's lab paid co-defendant Jonathan Markovich approximately $217,907.

- The Complaint summarizes the preliminary opinion of the Government's medical expert regarding excessive and medically unnecessary urinalysis testing at Compass Detox and WAR, which was referred to outside laboratories (including Garnto's lab). In addition, the Complaint provides an example where patient files and billing records demonstrate that an expensive urinalysis billed by Garnto's lab was medically unnecessary.

### B. The Employment Restriction

Garnto made his initial appearance on September 28, 2020 before Judge Hunt, who imposed as a condition of bond a restriction from working in the health care or addiction treatment

fields. [D.E. 22.] Subsequently, the parties agreed to a modification of this restriction so that Garnto could work as a customer service representative for a company that assists individuals in signing up for health insurance plans. [D.E. 123.] Specifically, the parties agreed, and Judge Hunt adopted, the following modified employment restriction:

> Mr. Garnto is restricted from working in the health care field, except that he may work for a call center that connects customers to potential health care insurance plans to the extent that Mr. Garnto is not (a) compensated based on the volume of customers he refers to such health care insurance plans; (b) directly or indirectly involved in the submission, processing or adjudication of claims for services that may be reimbursable under a federal, state, or private health care plan; or (c) involved in the marketing of any specific health care provider or any specific health care service, good, or medication.

Notably, these modifications still preclude Garnto from directly working in the health care field, particularly for any substance abuse treatment center, and from being paid based on the volume of patients he refers. Now, Garnto proposes two further modifications: (1) to work directly for unidentified substance abuse treatment centers as a website designer and marketer; and (2) to delete the restriction on compensation based on referrals (so long as he is not compensated based on the amount reimbursed by insurance). As described below, EKRA prohibits certain volume-based compensation arrangements, including certain per-patient or per-referral compensation. While Garnto does not detail how he is to be compensated or why he proposes this change, his proposed narrowing of the compensation restriction is simply inconsistent with EKRA.

### C. EKRA

EKRA was enacted in October 2018 and prohibits kickback arrangements with respect to services covered by a health care benefit program, including private health insurance plans such as those at issue in this case. Title 18, United States Code, Section 220 provides:

> Except as provided in subsection (b), whoever, with respect to services covered by a health care benefit program, in or affecting interstate or foreign commerce, knowingly and willfully-

6

> (1) solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind, in return for referring a patient or patronage to a recovery home, clinical treatment facility, or laboratory; or
>
> (2) pays or offers any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind-
>
>> (A) to induce a referral of an individual to a recovery home, clinical treatment facility or laboratory; or
>> (B) in exchange for an individual using the service of that recovery home, clinical treatment facility, or laboratory.

## ARGUMENT

**I.  GARNTO'S PROPOSED REVISIONS TO THE COMPENSATION RESTRICTION ARE INCONSISTENT WITH EKRA.**

Garnto proposes to revise the compensation restriction so that it no longer prohibits compensation based on the volume of customers he refers, but only prohibits compensation based on the value of insurance reimbursements. Mot. at 2. Charitably put, this revision is half-baked. Garnto provides no explanation for why <u>any</u> revisions to the compensation restriction would be necessary so that he can work as a website developer. This requested change is even more befuddling considering Garnto's statement that he will not be compensated based on the volume of customers referred. *See* Mot. at 4. Thus, it is unclear why this change is even being proposed. Without further explanation, the Government is constrained to oppose this proposed revision as inconsistent with EKRA, which expressly precludes payments for volume-based referral arrangements in the context of substance abuse treatment services covered by private insurance plans. *See* 18 U.S.C. § 220.

**II.     GARNTO'S REVISIONS TO THE EMPLOYMENT RESTRICTION NEEDLESSLY PUT PATIENTS AND PRIVATE INSURERS AT RISK OF FURTHER HARM.**

Garnto also proposes that the employment restrictions be modified to allow him to "market, develop, or manage websites on behalf of health care organizations," including substance abuse treatment centers. Mot. at 2, 5.[3] Garnto offers three primary arguments in support of his requested modifications, each of which should be rejected. First, he argues that the restrictions are "Draconian," particularly when compared to restrictions on his co-defendants who are attorneys and doctors. Second, he argues that he has worked in the substance abuse treatment industry his entire life, implying that he cannot work in any other industry. Third, he argues that he is required to follow the law, so that alone suffices to ensure he will conform his behavior going forward. Garnto's arguments in support of this modification are unavailing and his proposed modifications would needlessly put patients at further risk of harm and private insurers at further risk of loss. None of these arguments justify further modifying the employment restrictions set by Judge Hunt.

As an initial matter, a restriction from working in the health care field is common in health care fraud cases where defendants are released on bond pending trial. This is particularly true in addiction treatment fraud cases, where the potential for patient harm is especially acute. *See, e.g.*, *United States v. Ligotti*, 20-mj-08265, [D.E. 17] (S.D. Fla. Aug. 3, 2020) (Judge Brannon imposed restriction on medical director from working in addiction field); *United States v. Sanford*, 19-cr-20583, [D.E. 20, 23] (S.D. Fla. Sept. 17, 2019) (Judge McAliley imposed restriction from working

---

[3]     Garnto states that he already developed the websites, but does not state when he did so or at whose direction. *See* Mot. at 5 (noting that Garnto "can provide Pre-Trial Services with the names of any of the health care providers whose sites he has developed") (emphasis added). The Government has no information indicating that Garnto developed the websites while subject to the bond conditions entered by Judge Hunt, but notes that doing so could be a violation of his current bond conditions.

in health care field on alleged patient broker for addiction treatment center and owner of addiction treatment center); *United States v. Dublynn*, 19-cr-20583, [D.E. 42, 53] (S.D. Fla. Sept. 27, 2019) (Judge Goodman and Judge McAliley imposed restriction from working in health care field on alleged operator of addiction treatment center); *United States v. Hernandez*, 20-mj-03663, [D.E. 9] (S.D. Fla. Sept. 29, 2020) (Judge Goodman imposed restriction from working in addiction treatment field on alleged medical director of addiction treatment center); *United States v. Curran*, 18-80124, [D.E. 37] (S.D. Fla. July 2, 2018) (Judge Reinhart imposed restriction on working in health care or health care billing on alleged marketer and employee of addiction treatment center).[4]

Garnto's argument that such a restriction is overly "Draconian" is simply contrary to the common practices and experiences of numerous other defendants in this district, many of whom are simply accused of fraudulent billing and not, as Garnto is, conduct that inherently jeopardizes patient safety, and the ability of persons facing drug addiction to recover. In this regard, the cases Garnto cites in support of his request to work directly for one or more substance abuse treatment centers are inapposite.[5] Here, Garnto is alleged not only to have enabled fraudulent billing, but

---

[4] Even in other types of health care fraud matters, courts in this district have imposed similar restrictions from working in the health care field. *See, e.g.*, *United States v. Garipoli*, 19-cr-80196, D.E. 14 (S.D. Fla. Oct. 4, 2019) (Judge Reinhart imposed restriction from working in health care industry on owner of telemedicine company that allegedly sold doctors' orders for medically unnecessary cancer genetic testing in exchange for kickbacks to laboratories, who billed Medicare); *United States v. Patel*, 19-80181, D.E. 14 (S.D. Fla. Sept. 30, 2019) (Judge Matthewman imposed restriction from working in health care field on laboratory owner that allegedly bought doctors' orders for medically unnecessary cancer genetic testing in exchange for kickbacks from marketers and fraudulently billed Medicare).

[5] For example, in *United States v. Mayrelis Lopez*, 17-cr-20810-CMA (S.D. Fla.), Information, D.E. 1, there was no allegation of patient harm. To the contrary, the defendant pharmacy owner allegedly paid kickbacks to beneficiaries in order to use their Medicare number to bill for medications that were never dispensed. The defendant there was charged by Information, pled guilty, and cooperated with the Government. In any event, the defendant was allowed to work at an assisted living facility, while her charges pertained to a completely different medical field (a pharmacy). In *United States v. Thomas Sahs*, 18-cr-20710-CMA (S.D. Fla.),

9

also to have directed patient recruiters to provide illicit drugs or alcohol to known addicts to ensure that they would appear eligible for expensive detox services. As someone who has himself struggled with addiction (Mot. at 5), Garnto knew perhaps better than anyone how dangerous this practice was, yet allegedly did it anyway.

Garnto next attempts to argue that the employment restriction is even more unfair to him than it is to his co-defendants. There is no defendant in this case who is permitted to work in the substance abuse treatment field pending trial, period. Contrary to Garnto's strained analogy, while the lawyer defendants can continue to practice real estate law, they cannot become general counsel to a substance abuse treatment center. Likewise, while the doctor defendants may practice medicine, they may not provide addiction treatment. And unlike the doctors, who went to school for many years and have secured specialized licenses to practice medicine, Garnto makes no representation of his licensing or specialized education or experience in web design. Garnto is free to work as a web designer, but he cannot work directly for a health care provider, especially a substance abuse treatment center.

This raises an even more fundamental problem with Garnto's request. Garnto implies that the only way he can earn a living is by working in the substance abuse industry. Yet he is silent about whether he has even attempted to find work as a web designer for other types of businesses, much less work in a completely different field, such as the service industry or another customer service position besides Tobias & Associates. In any event, his trial is merely four months away.

---

Sentencing Memo, D.E. 378, the defendant (who also cooperated and pled guilty) worked for a medical device sales company with which Mr. Feldman represented there were no associations to "state, private, or federal health care programs." Garnto cannot make the same representation here with respect to his proposed employment.

However challenging Garnto finds this employment restriction, it will be moot one way or another in four months.

Garnto's final argument in support of his proposed modifications to the employment condition is that he will not violate the law because that could result in revocation of his bond. (Mot. at 5.) Of course Garnto is required to follow the law, just as everyone else is and just as he was for the three years that the grand jury alleges he conspired to commit health care fraud and several other crimes. The Government has presented probable cause—in a Complaint signed by Judge Hunt, at a preliminary hearing presided over by Judge Valle, and to a grand jury which returned an Indictment—that Garnto engaged in numerous violations of law. While Garnto is released, the Court should take reasonable precautions to ensure that patients seeking recovery are not put at further risk of harm by Garnto and that private insurance plans are not put at further risk of loss.[6] Restricting Garnto from working in the health care field, combined with the other conditions of bond, is the least restrictive condition that will reasonably assure the "safety of any

---

[6] In addition, as a practical matter, it is well-known that patients are often shuffled from treatment center to treatment center in South Florida. In fact, the Indictment alleges that conspirators, including Garnto, participated in the recycling of patients both within Compass Detox and WAR, but also with outside treatment facilities. *See* Indictment, Count 1, Manner and Means, ¶ 17. Evidence pertaining to this allegation is available in the discovery produced by the Government and is subject to the Protective Order. It is difficult to imagine a scenario where Garnto works for a substance abuse treatment center in South Florida and does not come into contact with, or learn information about, individuals who were once patients of Compass Detox or WAR. Garnto does not even contemplate this risk, nor discuss how this should be dealt with, particularly in light of the no-contact order prohibiting contact with Compass Detox or WAR patients. Furthermore, the Government is engaged in investigations of other treatment centers in South Florida. Some of these investigations remain covert. Needless to say, Garnto should not be associated with treatment centers that are under investigation for conduct similar to that in which Garnto previously engaged. Under Garnto's proposal, however, short of disclosing his employment to Pre-Trial Services (which he would be required to do anyway), Garnto offers no discussion of how the Government can ensure that Garnto does not become affiliated with treatment centers under investigation.

11

other person and the community," *i.e.*, substance abuse patients and private insurers.  18 U.S.C. § 3142(c)(1)(B).

## CONCLUSION

For the foregoing reasons, Garnto's Motion should be denied.

Dated: April 5, 2021

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

DANIEL KAHN, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By: */s/ James V. Hayes*
JAMES V. HAYES (FL Bar #A5501717)
Senior Litigation Counsel
JAMIE DE BOER (FL Bar #A5502601)
Trial Attorney
United States Department of Justice,
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 774-4276
James.Hayes@usdoj.gov
Jamie.deBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 5, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ James V. Hayes*