UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60020-DIMITROULEAS

UNITED STATES OF AMERICA

vs.

**JONATHAN MARKOVICH,
DANIEL MARKOVICH,
CHRISTOPHER GARNTO, et al.,**

      **Defendants.**
_____/

## GOVERNMENT'S STATUS REPORT AND MOTION TO CONTINUE TRIAL

The United States of America respectfully asks that this Court continue the trial of Defendants Jonathan Markovich, Daniel Markovich, and Christopher Garnto until February 28, 2022, when the trial of the other five defendants in this case is scheduled to begin, or to some other date convenient for this Court, and the parties. In support, the Government updates this Court on the status of various aspects of this case, and states as follows:

### The Procedural History Of This Case To Date.

1.    On January 19, 2021, eight Defendants were charged by Indictment in the above-captioned case. [D.E. 110]. This followed a criminal complaint against these same eight defendants (and two others not indicted) which was filed on September 25, 2020. [D.E. 1]. Defendants J. Markovich, D. Markovich, and Garnto are charged with Conspiracy to Commit Health Care Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349; and substantive counts of health care fraud in violation of 18 U.S.C. § 1347. Garnto, J. Markovich, and D. Markovich are charged with a conspiracy to violate the Eliminating Kickbacks in Recovery Act ("EKRA") in

1

violation of 18 U.S.C. § 371, and substantive EKRA charges in violation of 18 U.S.C. § 220. Finally, J. Markovich is charged with money laundering offenses (conspiracy and substantive counts) in violation of 18 U.S.C. §§ 1956 and 1957, as well as bank fraud in connection with Paycheck Protection Program ("PPP") loans made to Compass Detox and WAR, in violation of 18 U.S.C. § 1344(2).  These charges all stem from Defendants' alleged conduct involving the purported treatment and/or recruitment of patients suffering from alcohol and/or substance abuse addiction at Second Chance Detox, LLC (d/b/a "Compass Detox") and We Are Recovery, LLC. ("WAR"), as alleged in both the Indictment and Complaint.

2. The trial in this case was originally scheduled to begin on March 15, 2021. The parties jointly moved to continue this trial at a status conference on March 26, 2021. However, the Defendants asked for different trial dates. Three Defendants (J. Markovich, D. Markovich, and Garnto) asked for a trial date in August 2021, and the Court ordered that their trial would begin on August 2, 2021. [D.E. 169]. Five other Defendants (Waserstein, Santeiro, Lieberman, Bosch, and Kustura) requested a trial in or around June 2022, and this Court continued their trial to February 28, 2022. [D.E. 170]. This Court, in its Orders setting these dates, excluded Speedy Trial Time until each trial commences. [D.E. 169-70].

3. All of the Defendants, including J. Markovich, D. Markovich, and Garnto, are currently out on bond.

**The Status Of Discovery In This Case to Date.**

4. The discovery in this case is voluminous. As noted by the Government's First Response to the Standing Discovery Order in October 2020 [D.E. 46], discovery is ongoing.[1]

---

[1] At each Defendants' initial appearances on the criminal Complaint, Magistrate Judge Patrick Hunt entered Standing Discovery Orders. [See e.g., D.E. 6]. After Judge Hunt approved an agreed Protective Order

2

5.      To date, the Government has produced redacted interview reports in advance of the preliminary hearing before Judge Hunt in October 2020, and has since made four discovery productions to the defense, consisting of approximately 394,532 pages of documents, as well as excel files with thousands of lines of insurance billing data, four online portals containing thousands of patient files, and other native records.   This material was produced in the following productions, all pursuant to the Protective Order:

| PRODUCTION DATE | TOTAL PAGES | DESCRIPTION OF PRODUCTION |
| --- | --- | --- |
| **12/17/2020** | 359,567 | - The defendants' criminal histories;<br>- Voluminous financial records;<br>- Payroll records;<br>- Call detail records for various defendants and individuals related to the case;<br>- Ride-share data;<br>- Police reports;<br>- Flight and travel records;<br>- Voluminous insurance billing data and enrollment records;<br>- Addiction treatment licensing paperwork;<br>- Patient files, including PDF patient files and four interactive web portals;<br>- Multiple Facebook accounts and corresponding data;<br>- Prescription drug monitoring data;<br>- Open source materials, such as key filings in a civil litigation, Florida Secretary of State records, and website and social media screenshots; and<br>- Text messages provided by certain witnesses and cell phone extracts. |

applying to all Defendants [D.E. 34], the Government filed its first response to the Standing Discovery Order on October 12, 2020, and has since produced discovery subject to this Protective Order.

| PRODUCTION DATE | TOTAL PAGES | DESCRIPTION OF PRODUCTION |
|---|---|---|
| 3/1/2021 | 6,335 | <ul><li>15 additional subpoena returns, including financial records, deposition transcripts, flight records, and police reports;</li><li>Dozens of unredacted interview reports prepared by law enforcement, as well as numerous surveillance reports; and</li><li>An additional cell phone extract.</li></ul> |
| 3/25/2021 | 20,557 | <ul><li>Several additional subpoena returns;</li><li>Additional unredacted reports of interview;</li><li>CV of the Government's medical expert; and</li><li>Grand jury transcript, produced at one defendant's request.</li></ul> |
| 5/18/2021 | 8,073 | <ul><li>Several additional subpoena returns, including, among other things, additional financial records, flight records, police reports, and chiropractic patient files;</li><li>Additional unredacted reports of interview and other investigative documents;</li><li>Florida Department of Children and Families records; and</li><li>Florida Department of Health disciplinary records.</li></ul> |

6.   The Government anticipates making additional Rule 16 discovery productions, consisting of the following materials, among other potential discovery[2]:

> a. An additional subpoena return received by the Government, which the Government is processing and preparing for production, as further described below;

---

[2] The Government is aware of its ongoing discovery obligations and will continue to produce discovery as it comes into the Government's possession. For example, should the Government receive additional subpoena returns, conduct additional interviews, or otherwise receive discovery in this matter, it will continue to produce such discovery to all defendants.

  b. Data extracted from two cell phones seized from defendants Garnto and Elan Bakhshi, which are being filter-reviewed for potential attorney-client privileged communications, and are thus not yet available to the prosecution team;

  c. Unredacted search warrants and Title 42 orders (which were previously produced in October 2020 in redacted form);[3] and

  d. Expert disclosures.

  7. The subpoena return identified in Paragraph 6(a) is voluminous, consisting of approximately 1,553,265 pages of documents, which chiefly include e-mails, and other records, produced by Compass Detox and WAR in response to a subpoena issued on November 10, 2020. After the Government accommodated multiple extensions requested by Compass Detox and WAR due to the fact that they changed counsel, encountered technical difficulties in making their production, and encountered unexpected delays in conducting their privilege review of responsive documents, Compass Detox, and WAR made their initial production in response to this subpoena on March 1, 2021, but this production, as well as a second attempted production, both contained technological errors that prevented the Government from being able to fully view and process these documents. Compass Detox and WAR's counsel was highly cooperative and attentive in addressing these technical issues, but this process nonetheless took additional time. On April 26, 2021, Compass Detox and WAR produced documents the Government could fully view and process. The complete production was fully processed by the Government and became viewable by the prosecution team on or about May 13, 2021, and the Government is currently preparing the documents for production to defense counsel in a format that will be readily accessible. The Government anticipates producing these documents as soon as possible.

---

[3] The Government is in the process of moving to unseal these documents where necessary, and will produce them once they are ordered unsealed.

8.      Both the United States, and likely the Defendants, anticipate calling expert witnesses at trial, including witnesses to examine and explain medical records and billing data. This case involves approximately 984 distinct patients and approximately 2,285 patient files, along with prescription drug data, and voluminous insurance billing data from multiple private insurance plans. The case also involves allegations of money laundering involving multiple bank accounts whose records are likewise voluminous and will require extensive testimony.

### The Most Recent Administrative Order In The Southern District of Florida.

9.      On April 6, 2021, due to the ongoing COVID-19 pandemic, the S.D.F.L. entered its Ninth Administrative Order, Administrative Order 2021-33, from Chief Judge K. Michael Moore, which continued all trials scheduled to begin on or after March 30, 2020, until July 6, 2021, and which also continued all trial-specific deadlines to July 6, 2021. [Administrative Order at ¶ 6-7]. This Administrative Order further noted that Speedy Trial Time was excluded until July 6, 2021, pursuant to 18 U.S.C. § 3161(h)(7)(A). [Id. at ¶ 10]. Chief Judge Moore noted that future district-wide continuances may be entered as circumstances warrant. [Id. at ¶ 6].

### Current Schedule For The August 2021 Trial.

10.     Defendant J. Markovich filed an unopposed Motion Seeking an Order Setting Pre-Trial Schedule and Procedures, which this Court granted on April 29, 2021. [D.E. 183-84]. Expert witness disclosure is due by June 11, and June 25, 2021, for the Government and Defendants, respectively; and the Government's 404(b) Notice is due by June 25, 2021. The parties will exchange preliminary exhibit lists on July 2, 2021, and preliminary witness lists on July 16, 2021, with updated exhibit and witness lists due on July 23, 2021. Any pre-trial motions, including Motions *in Limine*, and *Daubert* Motions, are due by July 9, 2021. Proposed *Voir dire*

questions, proposed jury instructions, and request for *Writs ad Testificandum* are due before July 23, 2021.   All *Jencks* disclosures regarding trial witnesses are due by July 28, 2021.

11.     If the Court grants this Motion and continues this trial, the Government asks that the schedule detailed in D.E. 183 be adjusted accordingly to reflect the new trial date, and the due dates outlined above simply be reset off of the new trial date (i.e., a trial of February 28, 2022, would require expert disclosure from the Government to be due on January 8, 2022, and so on).

12.     The Government anticipates that its case-in-chief could take approximately 10-15 days or more to present against the Defendants scheduled for trial on August 2, 2021, once a jury is empaneled.   Thus, the entirety of the August 2021 trial could easily take approximately four weeks (or more), assuming that the defense presents expert(s) and other witnesses.

### The Need For A Continuance.

13.     Obviously, the situation regarding trial scheduling in the Southern District of Florida, while improving, remains fluid and uncertain given the ongoing COVID-19 pandemic. The parties will be available to try the case as soon as practicable and safe, in keeping with this Court's schedule and the district's Administrative Orders.   However, given the uncertainties and complications of trying any case during the COVID-19 pandemic, much less a multi-defendant, multi-week fraud and money laundering trial that will involve potentially dozens of witnesses (including may from out of state) and extensive documentary evidence, the Government respectfully submits this request for a continuance to February 28, 2022, so that all Defendants may be tried together, or to some other date convenient for this Court and the parties, when there is likely more certainty about trial practices and safety during the pandemic, makes eminent sense.

14.     The Discovery in this case is voluminous.   The Government has been working

7

diligently to produce it, and the Government has no doubt that Defendants' counsel have been working diligently to review it.  However, this is a complex case, and the Government respectfully submits that, given the size of the discovery (particularly the Compass and WAR e-mails, which total approximately 1,553,265 pages, and which the Government is in the process of preparing to produce to the defense), it doubts Defendants can be fully prepared for trial by August 2, 2021, and if any Defendants are convicted at trial, the Government has concerns about post-trial appeals, or Motions under 28 U.S.C. § 2255 for ineffective assistance of counsel, regarding the volume of discovery. For this reason alone, this trial should be continued.  For example, even the most diligent defense team would have a hard time reviewing the forthcoming production of Compass Detox and WAR emails, which likely contain both incriminating and exculpatory records, in time to designate such documents as exhibits by July 2nd, the deadline contemplated under the current scheduling order.

15.     It is the Government's understanding that the federal courthouse in Fort Lauderdale does not yet have a courtroom outfitted for a COVID-19 trial (unlike Miami, for example). Further, it is likely that only a few trials can take place at any one time in the entire Fort Lauderdale courthouse, in order to minimize the gathering of large groups, such as jurors, spectators, and witnesses.  Other trials presided over by other District Court Judges—such as those that are likely shorter in duration, less complicated in nature, and have currently incarcerated defendants, and/or are for cases that were indicted earlier than January 2021, and for other reasons—may take priority over this trial, out of concerns for the rights of those defendants and judicial economy.

16.     In addition, a juror panel will need to be summoned, and August is a difficult month to find a suitable panel for a trial of this length under any circumstances, particularly during this

COVID-19 pandemic.

17. Coordinating witness appearances and travel in the near future will be necessary, as will preparing witnesses, which is also complicated by the COVID-19 pandemic.

18. This Court likely has other cases and trials that need to be scheduled, or have already been set, in the Fall of 2021.

19. The Government will be presenting expert testimony in its case-in-chief regarding the health care and wire fraud conspiracy, and substantive health care fraud counts in both the August 2021 and February 2022 trials. The testimony of fact witnesses will also overlap considerably. Indeed, each trial would require virtually identical proof, and witness testimony, as the other.

20. Therefore, in the interests not only of judicial economy (and the Government is aware this Court stated during the status conference on March 26, 2021, that it had no problem trying this case twice), but also (and even especially) the burdens on witnesses in needing to appear and testify twice, and the need to coordinate their travel during a pandemic, the Government respectfully submits there is no need to try this case twice, in identical ways. This is particularly true given the volume of discovery, uncertainty of courtroom availability, jurors, and trial procedures during the COVID-19 pandemic, and the fact that this case is already set for trial as to five other Defendants on February 28, 2022.

21. Of course, the rights of the Defendants in this case are of paramount concern in setting a trial date, but the Government submits that the trials can be consolidated to February 2022 in full compliance with the Defendants' Speedy Trial rights. First, there is no Speedy Trial requirement that this case be tried in August 2021, ahead of other defendants who are currently

incarcerated or indicted in 2020, 2019 or earlier. And all eight Defendants in this case could be properly re-joined for trial since the Defendants and charges were properly joined in a single indictment under Federal Rule of Criminal Procedure 8.  Indeed, it is the strong preference of the Supreme Court and Eleventh Circuit that defendants properly charged together be tried together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together."). Not only does this promote judicial efficiency—particularly so since this case will be tried during or coming off the heels of a pandemic—but it also "serve[s] the interest of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.* (quotation and citations omitted). [4] Second, although the three Defendants scheduled for trial in August 2021 have objected to designation of this case as complex under 18 U.S.C. § 3161(h)(7)(B)(ii), they nonetheless agree that the case "is complex and the discovery produced thus far is voluminous." [D.E. 183, J. Markovich's Motion for Scheduling Order]. And further, this Court continued the trials in this case under the ends of justice provision of 18 U.S.C. § 3161(h). [D.E. 169]. The amount of discovery has now increased materially in light of the records produced to the Government by Compass Detox and WAR, which the Government is in the process of preparing for production to the Defendants. In sum, this case is

---

[4] The preference for trying defendants together, where (as here) it is appropriate to do so under Federal Rules of Criminal Procedure 8 and 14, is one reason why the Speedy Trial Act contains an exclusion for delays "when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). *See, e.g.*, *United States v. Tobin*, 840 F.2d 867, 869 (11th Cir. 1988) ("The legislative history of the [Speedy Trial] Act indicates that the purpose of the (h)(7) [now (h)(6)] exclusion was 'to make sure that [the Act] does not alter the present rules on severance of codefendants by forcing the Government to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under Section 3161.'"); *see also United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir. 1982) (In enacting the Speedy Trial Act, "Congress recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time.").

complex because of the "number of defendants, the nature of the prosecution, [and] the existence of novel questions of fact or law."[5]  In light of the complexity and volume of discovery, the Government is concerned that an August 2021 trial date places an "unreasonable expectation of adequate preparation" for trial.  18 U.S.C. § 3161(h)(7)(B)(ii).

22.   Accordingly, the Government submits this Motion to Continue the trial of J. Markovich, D. Markovich, and Garnto, to February 28, 2022, when the trial of the five other defendants in this case is scheduled, or to some other time convenient and practicable for this Court, and the parties.

### Rule 88.9 Certification

Undersigned emailed defense counsel for all three Defendants for their position.  Through their counsel, J. Markovich and D. Markovich oppose this Motion, while Garnto does not oppose, and in fact joins in this Motion.

---

[5] Beyond simply the number of defendants (10 charged by Complaint, 8 charged by Indictment), this case is among the more complex health care fraud prosecutions, involving two distinct treatment facilities offering five levels of care (nearly the full spectrum contemplated under applicable treatment guidelines and law), nearly a thousand patients (many with multiple stays, generating thousands of patient files total), and roughly $112 million in billings to private insurance.  Expert testimony will be extensive because, perhaps more than other types of health care fraud, substance abuse treatment fraud turns on evidence of medical necessity and/or the appropriateness of treatment decisions.  In addition, this is the first trial that the Government is aware of in this District which will include EKRA charges, which necessarily will involve complicated (and somewhat novel) legal questions.  The parties and Court will largely be starting from scratch on jury instructions for the EKRA charges, which will be an essential component of this trial since all three August 2021 Defendants face EKRA allegations (both conspiracy and substantive counts).

Dated: May 21, 2021

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

DANIEL KAHN, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By: /s/ James V. Hayes
JAMES V. HAYES (FL Bar #A5501717)
Senior Litigation Counsel
JAMIE DE BOER (FL Bar #A5502601)
Trial Attorney
United States Department of Justice,
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 774-4276
James.Hayes@usdoj.gov
Jamie.deBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 21, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *James V. Hayes*